Edward W. Swanson, SBN 159859
ed@smllp.law
Audrey Barron, SBN 286688
audrey@smllp.law
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant RICHARD LEE PARMER, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-00267 RS |
| Plaintiff, | **DEFENDANT'S POST TRIAL BRIEF** |
| vs. | |
| RICHARD LEE PARMER, JR., | |
| Defendant. | |

1

2

# TABLE OF CONTENTS

3

**STATEMENT OF FACTS**…………………………………………………..…………2

**ARGUMENT**……………………………………………………….......................... 7

    **A.  The Government Did Not Prove Knowing Distribution**……………….............. 7

      i. The Government Did Not Prove Mr. Parmer Knew the
Torrent Contained Child Pornography………………………………………...………8

      ii. The Government Did Not Prove Mr. Parmer Knowingly
Distributed a Visual Depiction……………………………………………….. 9

    **B.  The Government Did Not Prove Knowing Receipt**…………………………..11

    **C.  The Government Did Not Prove Knowing Possession**………………………… 14

**CONCLUSION**………………………………………………………………… 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) ................................................. 9

*United States v. Busby*, 2014 WL 1153712 (N.D. Cal. Mar. 20, 2014), *aff'd*,
   613 F. App'x 627 (9th Cir. 2015) .................................................................. 15

*United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011)........................................................ 15

*United States v. Geanakos,* 2017 WL 784893 (E.D. Cal. Mar. 1, 2017)..................................... 15

*United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014)............................................. 13

*United States v. Romm*, 455 F.3d 990 (9th Cir. 2006) ........................................... 10, 15

*United States v. Vallejos*, 742 F.3d 902 (9th Cir. 2014) ................................................. 12

*United States v. Welton*, 2009 WL 4507744 (C.D. Cal. Nov. 30, 2009) .......................... 8, 12, 14

*United States v. X–Citement Video, Inc.*, 513 U.S. 64 (1994) ................................. 7, 12

## FEDERAL STATUTES

18 U.S.C. § 2252 ................................................................................................. 1, 7, 9, 14

18 U.S.C. § 2256 ........................................................................................................ 9, 10

# **INTRODUCTION**

The government failed to prove beyond a reasonable doubt that Richard Lee Parmer possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), received child pornography in violation of 18 U.S.C. § 2252(a)(2), or distributed child pornography in violation of 18 U.S.C. § 2252(a)(2). With each count, the government failed to establish the element of knowledge. While the government established there was child pornography on Mr. Parmer's devices, they failed to introduce any evidence to show that Mr. Parmer had accessed those files and had knowledge of their presence. Regarding the receipt charge, the government failed to show that, at the time of alleged download, Mr. Parmer knew that material he was receiving through BitTorrent contained child pornography. And with the distribution count, the government not only failed to show Mr. Parmer knew he was distributing child pornography, but it also failed to show that he knew he was distributing visual depictions at all.

There were two reasons for these failures. First, the state law enforcement investigators failed to do a minimally adequate investigation. They did not investigate whether Mr. Parmer had accessed any of the files; whether he knew the name of the torrent or even what the name of the torrent was; whether he was looking for child pornography at the time he located the torrent; or even what activity took place on Mr. Parmer's devices at the time he allegedly obtained the illegal images. These are not difficult tasks to perform. The defense expert, Joshua Michel, described how simple it would have been for the government to conduct the necessary forensic investigation to prove or disprove their case, and that these steps are standard practice in a forensic examination. But the investigators upon whom the government relied did none of this essential work.

The second reason the government failed to meet its burden is that its presentation of evidence at trial was inadequate. The government called two witnesses, neither of whom understood how BitTorrent operates. Their familiarity ranged from one witness having "heard of it" years ago to the other knowing how peer-to-peer networks operate but not understanding how BitTorrent differs from other networks. Their inexperience with BitTorrent resulted in inaccurate testimony about BitTorrent's operation, and as a result insufficient evidence of guilt. The government failed to establish that Mr. Parmer knew what he was obtaining was child

pornography when he allegedly downloaded and distributed the files using BitTorrent. That failure is fatal to the receipt and distribution charges. And the distribution charge was further undermined by the government's not establishing that Mr. Parmer was aware that he could distribute a "visual depiction" through BitTorrent.

There is no dispute that the images at issue in this case are very disturbing, and the charges and associated penalties are extremely serious. But the burden on the government for proving a child pornography case is no less than in any other. They cannot ask the Court to infer the existence of certain elements because it seems logical or even probable. The government must prove all the elements beyond a reasonable doubt, and with each count in this case, the government has failed to meet its burden.

## STATEMENT OF FACTS

The government failed to prove essential facts concerning how BitTorrent operates, whether Mr. Parmer would have seen what material he was downloading, whether he was on notice that downloading files on BitTorrent would result in the distribution of visual depictions, and whether the government had shown that Mr. Parmer had viewed files on his devices. We will briefly review these facts demonstrating how the evidence presented at trial fails to support a conviction on any of the three counts charged.

BitTorrent

The government presented two witnesses – Detective Ernest and Sergeant Servat – on the crucial issue of how BitTorrent operates and how the nature of that operation allegedly proved elements of the offense. The evidence at trial demonstrated that the government's witnesses were unfamiliar with the operation of BitTorrent, and, as a result, their evidence failed to support a conviction.

Detective Ernst testified that he had no prior experience with BitTorrent, and he could not answer basic questions about the program. (Ernst 93:4-10; 123:11-25). Detective Ernst "didn't use the program," so he was unsure if there were multiple ways a BitTorrent user could download content. (Ernst 120:19-25). Likewise, Detective Ernst was not familiar with indexing sites commonly used to find torrents. (Ernst 121:4-6).

Sergeant Servat, for his part, testified incorrectly regarding several basic aspects of BitTorrent.  Sergeant Servat testified that to download content, a user must download a torrent file. (Servat 16:21-17:10).  Sergeant Servat was not familiar with the concept of magnet links, which is a method of finding content to download on BitTorrent without first downloading a torrent to a user's computer. (Servat 46:19).  As discussed in more detail below, Mr. Michel explained that torrents are commonly found through indexing sites that allow a user either to download a torrent file and open it in BitTorrent or simply to click a magnet link that automatically populates the torrent in Bit Torrent without downloading the torrent file to the user's device.  (Michel 145:6-13; 153:1-12; 164:3-8).

Next, Sergeant Servat incorrectly testified that a target file (a file that a torrent directs to) has the identical name as a torrent file.  (Servat 17:25-18:6).  This is not true.  As Mr. Michel testified and Sergeant Servat acknowledged on cross-examination, torrent files and target files are given file names by their creators, the same files can be given different names by different users, and the name of a torrent does not always accurately describe the target files it leads to. (Michel 50:11-23; Servat 58:19-59:10).  Sergeant Servat's testimony regarding the naming conventions of files was also inherently illogical; as he acknowledged, one torrent can direct to "thousands" of target files, and those thousands of files cannot all share the same file name as the torrent. (Servat 18:7-18:10).  File names are whatever the creator of the files decides to name them, and they do not always accurately describe their contents. (Michel 152:15-19).

Finally, Sergeant Servat incorrectly testified that BitTorrent creates a "shared folder" for users in which "anything you download gets placed in that shared folder, and anything that remains in there is publicly available for people to download from you."  (Servat 23:24-24:2).  According to Sergeant Servat, this "shared folder" exists on the hard drive of the computer, and files remain accessible to other BitTorrent users as long as they reside in the "shared folder." (Servat 63:21-64:9).  As Mr. Michel explained, this is not how BitTorrent works.  Instead, BitTorrent downloads content to a particular folder on the user's hard drive, but it is only content that the user is downloading or seeding in the BitTorrent program that is available to other users, not all content in the designated hard drive folder.  (Michel 162:16-163:19).  If a torrent job is

removed from BitTorrent, the content on the user's hard drive is no longer available to others. (Michel 169:4-10).  The concept of designating a "shared folder" in which all of the contents of that folder are being shared with others exists in other peer-to-peer networks like LimeWire, but BitTorrent simply does not function that way, and Sergeant Servat was mistaken.  (Michel 169:11-170:7).

Mr. Michel's expert testimony reinforced the inaccurate nature of the evidence presented by the government.  Mr. Michel testified that when a user downloads content on BitTorrent using a magnet link, the user may not see the names of the target files before downloading, because the downloading process starts automatically.  (Michel 166:17-23).  When using the magnet link process, a user would have to proactively seek out the names of the target files by clicking on the file tab in the indexing site or in BitTorrent.  (Michel 152:7-14; 159:18-16:4).  Mr. Michel testified that this situation is not uncommon; magnet links are frequently found on indexing sites, and, in fact, the most popular indexing site *only* offers the option to access content via a magnet link.  (Michel 167:13-17).  Mr. Michel further testified that if a user downloads content in BitTorrent by downloading a torrent rather than clicking the magnet link, the user might see the file names if a dialogue box popped up showing the file names, but a user could also select to have that dialogue box not appear, in which case the names of the files would not automatically appear.  (Michel 166:24-167:7).

One point on which all witnesses agreed was that the BitTorrent license agreement included language under the heading "Automatic Uploading" that informed users that "BitTorrent accelerates downloads by enabling your computer to grab pieces of files from other BitTorrent or BitTorrent users simultaneously.  Your use of BitTorrent software to download files will, in turn, enable other users to download pieces of those files from you, thereby maximizing download speeds for all users."  Government Exhibit 11.  The license agreement also indicates that by accepting the agreement, "You consent to other users' use of your network connection to download portions of such files from you."  *Id.*

1    The Investigation

2        Sergeant Servat testified that his investigation utilized Torrential Downpour, a software

3    specifically designed for and only available to law enforcement.  (Servat 19:5-10; 26:9-12;

4    54:20-25).  Torrential Downpour differs from regular BitTorrent software available on the

5    internet because rather than gathering pieces of files from multiple users, Torrential Downpour

6    allows law enforcement to "download[] from just a single source."  (Servat 19:21-19:22).  Users

7    of BitTorrent, rather than Torrential Downpour, cannot select a particular user from whom to

8    download a complete file.  (Servat 52:22-53:4).

9        Sergeant Servat testified that he investigated a "particular torrent file" with a hash value

10    ending in C19 ("the C19 torrent file") that had been previously identified by law enforcement as

11    containing child pornography.  (Servat 26:13-16; Servat 27:5-6).  Sergeant Servat explained that

12    a target device was sharing the C19 torrent file in question, and on March 13, 2018, law

13    enforcement connected to the target device using Torrential Downpour.  (Servat 27:7-16).  Over

14    the course of approximately 12 hours, law enforcement was able to download from the suspect

15    device the C19 torrent file and over 635 target files to which the C19 torrent file directed.

16    (Servat 27:19; 29:8-16).

17        Sergeant Servat testified that he did not recall the name of the C19 torrent file that SFPD

18    downloaded from the suspect device.  (Servat 58:4-8).  Contrary to his earlier testimony that

19    torrent files always share the name of the files they direct to (Servat 17:25-18:6), Sergeant Servat

20    later acknowledged that the same torrent file, directing to the same files, can have different

21    names, and the torrent could be named in a way that did not accurately describe the files it

22    directed to.  (Servat 58:19-59:10).  Sergeant Servat did not know the name of the torrent file

23    from the perspective of the person who had been using the subject computer.  (Servat 59:11-24).

24    Detective Ernst testified that he did not "remember looking for [the torrent]" on the subject

25    computer, but if he had, he was "sure [he] would have noted it in the report." (Ernst 129:1-2).  In

26    other words, the investigators did not know how the torrent that Mr. Parmer allegedly

27    downloaded was named, and they apparently did not even look for that torrent on his computer.

28

1    Sergeant Servat testified that he also did not attempt to look for search history on Mr.

2    Parmer's computer, and he was not sure if anyone else on the investigative team had done so.

3    (Servat 45:18-25).  Sergeant Servat acknowledged that he did not know how the user of the

4    subject device obtained the C19 torrent file and its target files, whether via a magnet link or by

5    downloading the torrent file to the suspect device hard drive.  (Servat 61:20-24).  Sergeant Servat

6    had "no way of knowing" whether, at the time that SFPD was downloading the torrent and its

7    target files from the suspect device, the user of the suspect device saw the target file names or

8    looked at the target files.  (Servat 62:9-20).  Sergeant Servat also had no way of knowing how

9    many torrents the suspect device was downloading at the time SFPD was downloading the

10   torrent from the suspect device.  (Servat 61:2-19).

11   But Mr. Michel testified about multiple ways SFPD could have learned whether Mr.

12   Parmer looked at the files at the time he allegedly received and distributed them.  Mr. Michel

13   testified that when he, as a forensic examiner, is looking to determine whether a user has

14   interacted with a file, in addition to looking for internet search history, he looks for various

15   computer artifacts that indicate a user's interactions with files.  (Michel 170:9-21; Michel 202:5-

16   13).  For example, Mr. Michel testified that he looks for LNK files, which indicate that a user has

17   tried to double click on a file.  (Michel 170:22-171:9).  Mr. Michel also testified that he looks for

18   artifacts called jump lists, which indicate a user has interacted with a file. (Michel 171:14-24).

19   He also looks for ShellBags, which allow him to visualize how a user interacted with a file

20   (Michel 171:25-172:11).  Mr. Michel testified that in his forensic work he also looks at databases

21   that track interactions with specific programs, such as Windows Media Player, to show "the

22   dates and times that [] files were accessed." (Michel 172:12-25).

23   Mr. Michel explained that as a forensic examiner, he does not rely alone on file system

24   data, such as created dates, accessed dates, or modified dates, to determine forensically whether a

25   user has interacted with a file. (Michel 202:19-203:15).  Mr. Michel explained there are many

26   reasons file system data can be inaccurate.  For example, the use of virus scanning software can

27   create accessed dates even where a user has not accessed a file, and file system data can be

28   incorrect due to files moving between multiple file systems.  (Michel 174:2-10; 203:8-15).

<u>The Devices</u>

Detective Ernst testified that seven of the nine drives seized from Mr. Parmer's residence did not contain suspected child pornography but did contain thousands of other media files. (Ernst 129:14 – 132:4). Detective Ernst testified that in addition to containing suspect child pornography, Mr. Parmer's laptop contained files that appeared to be music, films, and books. (Ernst 108:6-24). Additionally, many of the torrent files found on Mr. Parmer's devices appeared to be related to music and TV. (Ernst 133:14-134:1).

## **ARGUMENT**

### **A. The Government Did Not Prove Knowing Distribution**

The government failed to prove the first, fourth, and fifth elements of distribution because the government failed to prove beyond a reasonable doubt that Mr. Parmer knew his BitTorrent client was distributing a visual depiction, and the government failed to prove beyond a reasonable doubt that Mr. Parmer knew at the time of distribution that the C19 torrent file SFPD downloaded from him contained minors engaged in sexually explicit conduct.

In order to convict Mr. Parmer of distribution of child pornography, the government was required to prove: (1) Mr. Parmer knowingly distributed a visual depiction using a means or facility of interstate commerce by any means including by computer or mail; (2) the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; (3) such visual depiction was of a minor engaged in sexually explicit conduct; (4) the defendant knew that such visual depiction was of sexually explicit conduct; and (5) the defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor. Dkt. No. 198 at 2; Ninth Circuit Model Criminal Jury Instruction 8.184 (Sexual Exploitation of Child—Transportation of Child Pornography).

As agreed in the joint memorandum regarding legal standards, although the term 'knowingly' in the text of 18 U.S.C. § 2252(a)(1) and (2) appears only to modify the act of transportation, distribution, receipt, or shipment, the United States Supreme Court has held that the knowledge requirement also applies to the sexually explicit nature of the material as well as the minority status of the persons depicted. *See United States v. X–Citement Video, Inc.*, 513

U.S. 64, 78 (1994); Dkt. No. 198.  Thus, the government must prove both that Mr. Parmer knowingly distributed a visual depiction, and that Mr. Parmer knew the visual depiction contained child pornography at the time of distribution.  The government failed to do so.

        i.   <u>The Government Did Not Prove Mr. Parmer Knew the Torrent Contained Child Pornography</u>

The government failed to prove what Mr. Parmer knew about the C19 torrent file (or the target files to which that torrent directed) on March 13 and March 14, 2018, the dates SFPD downloaded the files from his device and Mr. Parmer therefore allegedly distributed the files. For this reason, the government has not proven beyond a reasonable doubt that Mr. Parmer knew the files contained child pornography.

The government did not prove the most basic information about the C19 torrent file: its name.  The government witnesses did not know the name of the C19 torrent file as it appeared to law enforcement or as it appeared to Mr. Parmer.  The government did not prove how Mr. Parmer came to find the C19 torrent file, whether by searching the internet, finding the torrent on a torrent indexing site, or some other means.  Sergeant Servat did not look for Mr. Parmer's search history near March 13 and March 14, 2018, and the government offered no evidence of Mr. Parmer's search history, despite Mr. Michel testifying that is a basic step in forensic analysis.  The government did not prove how Mr. Parmer came to have the C19 torrent file and its target files he allegedly distributed, whether by magnet link or a torrent download, and thus the government offered no proof that Mr. Parmer saw any file names indicative of child pornography prior to or during downloading.  And although the fact that some files with matching hash values were found on Mr. Parmer's hard drives may be relevant to his later possession of child pornography, it says nothing of what Mr. Parmer knew about the files before allegedly downloading (and simultaneously uploading) them on March 13 and March 14, 2018. *See United States v. Welton*, 2009 WL 4507744, at *20 (C.D. Cal. Nov. 30, 2009) (defendant was guilty of possession but not receipt, where the government proved that defendant kept images he later knew to be child pornography, but government did not rebut the possibility that

the defendant received the collection of images not knowing they contained child pornography and later "culled the images he preferred and stored them.").

The government asks the Court to guess what the C19 torrent file was called and to assume Mr. Parmer knew about the contents of the files he allegedly downloaded and distributed on March 13 and March 14, 2018, but proof beyond a reasonable doubt requires much more than assumptions; it requires evidence.

The government may point to *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), which explored distribution in the context of a different peer-to-peer network, LimeWire, but *Budziak* does not help the government get past the lack of evidence of Mr. Parmer's knowledge. In *Budziak*, the defendant maintained child pornography "in a shared folder that was accessible to other LimeWire users," and the folder itself was labeled "shared." *Id.* at 1107-09.  The Ninth Circuit held that "the evidence is sufficient to support a conviction for distribution under 18 U.S.C. 2252(a)(2) when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it." *Id.* at 1109.  *Budziak* does not discuss BitTorrent, and as Mr. Michel explained, BitTorrent is different than LimeWire in that there is no "shared folder" in which all files are perpetually available to other network users.  There was no evidence Mr. Parmer maintained a "shared folder," and thus *Budziak* does not apply.  But even if it were applicable, *Budziak* requires that the defendant *knew* there was child pornography in the "shared folder."  The government has offered no proof, much less proof beyond a reasonable doubt, of what Mr. Parmer knew about the C19 torrent file or its target files at the time he was allegedly downloading and distributing them.  The Court should acquit Mr. Parmer on this basis.

> ii.   The Government Did Not Prove Mr. Parmer Knowingly Distributed a Visual Depiction

The government must prove beyond a reasonable doubt that Mr. Parmer knew he was distributing a "visual depiction."  A "visual depiction" includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image." 18 U.S.C. § 2256(5).  The government did not prove beyond a reasonable doubt that Mr. Parmer knew he was

distributing a complete image or something that was "capable of conversion into a visual image." The government proved only that the BitTorrent license agreement notified users that others could obtain pieces or portions of files from them, and there was no evidence that a piece of a file could be converted into an image.

In *United States v. Romm*, the defendant argued that files found in the defendant's internet cache were not "visual depictions" because the user had to undergo an extra step to convert the cache file to a normal image file that was then viewable. *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006). The Ninth Circuit rejected this argument, because the defendant "could convert the image files in his internet cache into a viewable form by right-clicking his mouse," and thus the cache files were "capable of conversion into a visual image." *Id.* at 998.

The BitTorrent license agreement put users on notice that other people could obtain "pieces" or "portions" of files from the user, not a complete file or something capable of being converted into a complete file. But unlike the cache file in *Romm* that could become a viewable image with a simple right click, the government put on no evidence that a piece or portion of a file is "capable of conversion into a visual image." Rather, as Mr. Michel explained, a download is not complete until all the pieces of a file have successfully downloaded. (Michel 161:16-21). In his demonstration of the BitTorrent program in which he downloaded the open-source operating system Tails i386, Mr. Michel testified that although he uploaded 1.5 megabytes of data while he was downloading a file, those "pieces" of data he uploaded were not sufficient for someone to have obtained the complete Tails i386 file from him. (Michel 201:1-8).

Although law enforcement was able to obtain a complete file from the suspect device using a special software program, Torrential Downpour, Sergeant Servat acknowledged that normal BitTorrent users cannot target a user and choose to download a complete file from that user. (Servat 52:22-53:4). Nothing in the license agreement put Mr. Parmer on notice that another user could obtain a complete file from him, and the government presented no evidence that Mr. Parmer was aware of programs like Torrential Downpour that allow a user to obtain a complete file from one user, much less that that program was being used to extract a complete visual image from his computer. For this reason, the government failed to prove beyond a

1  reasonable doubt that Mr. Parmer *knowingly* distributed a visual depiction – something "capable

2  of conversion into a visual image."  18 U.S.C. § 2256(5).

3        Undersigned counsel is not aware of any case discussing whether it is sufficient, when

4  the government is attempting to prove that a defendant *knowingly* distributed a visual depiction

5  through BitTorrent, for the government to present only evidence that the defendant was on notice

6  that BitTorrent shared "pieces" of the defendant's files, rather than complete files or something

7  capable of conversion into a visual image.

8        There is reasonable doubt that Mr. Parmer understood that he was distributing a "visual

9  depiction" by using BitTorrent, given that the BitTorrent license agreement notified users only

10  that others could obtain "pieces" or "portions" of files from the user.  The government provided

11  no evidence that a "piece" or "portion" of a file can be converted to a visual depiction, and the

12  government offered no evidence that Mr. Parmer was aware that law enforcement could obtain a

13  whole file from him using special investigative software.  The Court should acquit Mr. Parmer of

14  distribution on this basis as well.

15    **B.  The Government Did Not Prove Knowing Receipt**

16        The government failed to prove the first, fourth, and fifth elements of receipt because the

17  government failed to prove beyond a reasonable doubt that Mr. Parmer knowingly received a

18  visual depiction, and the government failed to prove beyond a reasonable doubt that Mr. Parmer

19  knew at the time of receipt that the C19 torrent file SFPD downloaded from him contained

20  minors engaged in sexually explicit conduct.

21        To convict Mr. Parmer of distribution of child pornography, the government was required

22  to prove: (1) Mr. Parmer knowingly received a visual depiction using a means or facility of

23  interstate commerce by any means including by computer or mail; (2) the production of such

24  visual depiction involved the use of a minor engaging in sexually explicit conduct; (3) such

25  visual depiction was of a minor engaged in sexually explicit conduct; (4) Mr. Parmer knew that

26  such visual depiction was of sexually explicit conduct; and (5) Mr. Parmer knew that at least one

27  of the persons engaged in sexually explicit conduct in such visual depiction was a minor.  Dkt.

28

No. 198 at 2; Ninth Circuit Model Criminal Jury Instruction 8.184 (Sexual Exploitation of Child—Transportation of Child Pornography).

As with distribution, to prove receipt the government must prove both that Mr. Parmer knowingly received a visual depiction and that Mr. Parmer knew the visual depiction contained child pornography at the time of receipt. *See United States v. X–Citement Video, Inc.*, 513 U.S. 64, 78 (1994); Dkt. No. 198. The Ninth Circuit has explained that "[r]eceipt of child pornography requires the same elements as possession, with an additional element of 'knowing acceptance or taking.'" *United States v. Vallejos*, 742 F.3d 902, 906 (9th Cir. 2014) (quoting *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008)). "The added element of the receipt charge is that the government must prove the requisite mens rea *at the moment defendant took possession* of the child pornography." *United States v. Welton*, 2009 WL 4507744, at *18 (C.D. Cal. Nov. 30, 2009) (emphasis added).

As discussed, the government failed to prove the most basic information about the C19 torrent file and its target files that Mr. Parmer allegedly received, and there is thus reasonable doubt that Mr. Parmer "knowing[ly] accept[ed]" or took child pornography. *Id.* The government offered no evidence—not internet search history, not forensic artifacts, not the name of the C19 torrent file—that would indicate what Mr. Parmer knew about the C19 torrent file and the contents of its target files at the time of download. Detective Ernst's testimony highlighted that Mr. Parmer was a mass consumer of media, including adult pornography, movies, TV shows, and books, and Sergeant Servat acknowledged he could not tell what other media Mr. Parmer's device was downloading at the time. (Indeed, the government did not even prove on what date Mr. Parmer downloaded the files.) Mr. Michel testified that there is no requirement that torrent files accurately describe their contents, and in the course of his work he has encountered files whose names did not match their contents. (Michel 202:16-18.) There was simply no evidence presented that Mr. Parmer would have been on notice that the C19 torrent file or its target files contained child pornography at the time he received them. As the defense pointed out at trial, there are many ways the government could have proven this fact were it true. They failed to do any of them.

1    In an effort to evade the consequences of failing to prove the element of knowing

2    receipt, the government may point to *United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014).

3    In *Hardrick*, the court, looking at the evidence "in the light most favorable to sustaining the

4    verdict," found that a rational trier of fact could have found proof beyond a reasonable doubt of

5    receipt although "there was no direct evidence that he had downloaded or watched the [charged]

6    files." *Id.* at 1057.  The Ninth Circuit found that the "number, timing, and location" of child

7    pornography videos on the defendant's devices provided sufficient circumstantial evidence for a

8    rational trier of fact to find the defendant knowingly received child pornography.  In addition, a

9    forensic examiner found "most recently used" files that showed that the defendant had recently

10   viewed child pornography.  *Id.* at 1054.

11   The facts here do not mirror *Hardrick*.  First, there is no evidence in this case, as there

12   was in *Hardrick*, that the defendant had recently viewed child pornography; as the government

13   acknowledged in closing arguments, the government offered no evidence in this case that Mr.

14   Parmer ever viewed any child pornography files found on his devices (210:11-12 ("[T]here's no

15   forensic proof that any of these files were opened.").  In addition, *Hardrick* is not a case about

16   peer-to-peer networks or torrents.  The receipt charge in this case is based on Mr. Parmer

17   allegedly downloading a specific torrent file, the C19 torrent and its target files, whose name the

18   government neither investigated nor proved.  In this case, there is reasonable doubt as to what

19   Mr. Parmer knew at the time of receiving the C19 torrent and its target files – What was the

20   name of the torrent?  How did Mr. Parmer come to find it?  Did he see the target file names?

21   The government offers no answers.

22   Finally, *Hardrick* can be distinguished from this case procedurally speaking as well.

23   The appellate court in *Hardrick*, of course, was required to confirm the conviction unless the

24   defendant met the high standard of proving that "no rational trier of fact could have found the

25   essential elements of the crime beyond a reasonable doubt."  The Court here as the fact finder

26   can exercise its independent judgment of whether the government proved its case beyond a

27   reasonable doubt.  Even if the facts in *Hardrick* aligned precisely with the facts here (and they do

28

1   not), the Court would not be required to convict.  For all the reasons discussed, the government

2   did not meet its burden in the particular facts of this case.

3        The government may also point to the fact that files whose hash values were the same as

4   some of the target files were found on Mr. Parmer's devices after March 13 and March 14, 2018.

5   That may be relevant to Mr. Parmer's later possession of those files, but it does not prove what

6   Mr. Parmer knew at the time of receipt.  *See United States v. Welton*, 2009 WL 4507744, at *20

7   (C.D. Cal. Nov. 30, 2009) (defendant was guilty of possession but not receipt, where the

8   government proved that defendant kept images he later knew to be child pornography, but

9   government did not rebut the possibility that the defendant received the collection of images not

10  knowing they contained child pornography and later "culled the images he preferred and stored

11  them.").

12       The Court should acquit Mr. Parmer of receipt on this basis.

13   **C. The Government Did Not Prove Knowing Possession**

14       To convict Mr. Parmer of possession in violation of 18 U.S.C. § 2252(a)(4)(B) and

15  (b)(2), the government was required to prove: (1) Mr. Parmer knowingly possessed matters that

16  he knew contained a visual depiction of a minor engaged in sexually explicit conduct; (2) Mr.

17  Parmer knew the visual depiction contained in the matters was of a minor engaged in sexually

18  explicit conduct; (3) Mr. Parmer knew that production of such visual depiction involved use of a

19  minor in sexually explicit conduct; and (4) the visual depiction had been shipped and transported

20  using a means and facility of interstate commerce.  Dkt. No. 198 at 2-3; Ninth Circuit Model

21  Criminal Jury Instruction 8.185 (Sexual Exploitation of Child—Possession of Child

22  Pornography).  In addition, because the government has alleged in count three that the defendant

23  acted in violation of 18 U.S.C. § 2252(b)(2), the government must prove beyond a reasonable

24  doubt that a visual depiction involved in the offense involved a prepubescent minor or a minor

25  who had not attained 12 years of age.

26       The government conceded at trial that there was no proof that Mr. Parmer viewed any of

27  the child pornography images found on his devices.  (210:11-12 ("[T]here's no forensic proof

28  that any of these files were opened.")).  Generally, cases upholding convictions of defendants for

knowing possession include proof that the defendant viewed child pornography.  *See United States v. Flyer*, 633 F.3d 911, 919 (9th Cir. 2011) (insufficient evidence where there was "no evidence here that [defendant] had accessed, enlarged, or manipulated any of the charged images, and he made no admission that he had viewed the charged images on or near the time alleged in the indictment."); *United States v. Romm*, 455 F.3d 990, 1000 (9th Cir. 2006) (sufficient evidence where defendant searched for and viewed child pornography); *United States v. Busby*, 2014 WL 1153712, at *4 (N.D. Cal. Mar. 20, 2014), *aff'd*, 613 F. App'x 627 (9th Cir. 2015) (sufficient evidence where defendant searched for and viewed child pornography).

Even if the folder structure in which child pornography files are stored is relevant to the defendant's knowledge, the government offered no forensic proof or testimony in this case that the folder structure containing child pornography on Mr. Parmer's devices was created by Mr. Parmer, rather than downloaded.  *See United States v. Geanakos*, 2017 WL 784893, at *2 (E.D. Cal. Mar. 1, 2017) (folder structure relevant where defendant admitted to creating the relevant folder and forensic specialist testified the folder was user-created).

Again, the answer to the question of whether Mr. Parmer looked at these files or created the file structure was not beyond the government's reach.  But the investigators failed to use any forensic techniques to prove as much, and the government is left asking the Court to fill in the blanks.

Because the government failed to prove that Mr. Parmer viewed child pornography files found on his devices, there is reasonable doubt that Mr. Parmer knew he possessed child pornography.

## CONCLUSION

For the foregoing reasons, Mr. Parmer respectfully requests that the Court enter verdicts of not guilty on all three counts.